MATTHEW C. MACLEAR (SBN 209228)
mcm@atalawgroup.com
ERICA A. MAHARG (SBN 279396)
eam@atalawgroup.com
AQUA TERRA AERIS (ATA) LAW GROUP
4030 Martin Luther King Way
Oakland, CA 94609
Telephone: (510) 473-8793

**Attorneys for Plaintiffs**
SAN JOAQUIN RAPTOR/WILDLIFE RESCUE CENTER
CENTRAL VALLEY SAFE ENVIRONMENT NETWORK
PROTECT OUR WATER

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN JOAQUIN RAPTOR/WILDLIFE RESCUE CENTER a non-profit corporation, CENTRAL VALLEY SAFE ENVIRONMENT NETWORK, a non-profit association, and PROTECT OUR WATER, a non-profit association,<br><br>        Plaintiffs,<br><br>   vs.<br><br>ARDAGH GLASS INC., a corporation and ARDAGH GROUP S.A., a corporation,<br><br>        Defendants. | Civil Case No.:<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES UNDER THE CLEAN AIR ACT (42 U.S.C. § 7604)** |

# I.   JURISDICTION AND VENUE

1.      Plaintiffs San Joaquin Raptor/Wildlife Rescue Center ("SWR/WRC"), Central Valley Safe Environment Network ("CVSEN"), and Protect Our Water ("POW") (collectively, "Plaintiffs") bring this suit under the citizen suit enforcement provision, 42 U.S.C. § 7604, of the federal Clean Air Act ("CAA") to redress and prevent violations of the CAA by Ardagh Glass Inc. and Ardagh Group S.A. ("Defendants") at its facility located at 24441 Avenue 12, Madera, California, 93637 ("Facility"). Among other things, the suit seeks declaratory relief, injunctive relief, and the assessment of civil penalties for violations of permits and requirements under Title V (*i.e.*, the federal operating permits program) of the CAA, 42 U.S.C. §§ 7661-7661f, and the State Implementation Plan ("California SIP") adopted by the State of California and approved by the Environmental Protection Agency ("EPA") pursuant to section 110 of the CAA, 42 U.S.C. § 7410, codified at 40 C.F.R. § 52.220. In this lawsuit, Plaintiffs allege that Defendants have repeatedly violated and continue to violate requirements in the Title V permit to operate the Facility.

2.      This court has subject matter jurisdiction under the CAA, 42 U.S.C. § 7604 (citizen suit provision), and the federal jurisdiction statute, 28 U.S.C. § 1331 (federal question jurisdiction) because the sources of the violations are located within this judicial district. The relief requested is authorized pursuant to 42 U.S.C. § 7604 and 28 U.S.C. §§ 2201-2202.

3.      The violations complained of occurred and continue to occur in the Eastern District of California. Venue is therefore proper in the Eastern District of California, pursuant to the Clean Air Act, 42 US.C. § 7604(c)(1), and the federal venue statute, 28 U.S.C. § 1391(b)-(c).

4.      Consistent with the CAA's citizen suit provision, 42 U.S.C. § 7604(b)(1)(A), on March 18, 2022, Plaintiffs notified in writing the Administrator of the EPA (the "Administrator"), the Regional Administrator of Region 9 EPA, the Governor of California, the California Air Resources Board ("CARB"), Defendants, and the plant manager of the Facility of the violations alleged in this complaint and of Plaintiffs' intent to sue. More than sixty (60) days have passed since this notice ("Notice of Intent to Sue") was sent via certified U.S. mail.

5.      Plaintiffs are informed and believe, and thereon allege, that neither EPA nor CARB have commenced or are diligently prosecuting a court action to redress the ongoing violations

1    alleged in the Notice of Intent to Sue and in this complaint. The Notice of Intent to Sue and its

2    exhibits are attached hereto as **Exhibit A** and fully incorporated herein by reference.

3        6.      A copy of this complaint will be sent to the Attorney General of the United States

4    and the Administrator, pursuant to 42 U.S.C. § 7604(c)(3).

5                              ## II. <u>PARTIES</u>

6        7.      Plaintiff SJR/WRC is a California non-profit corporation and plaintiffs CVSEN and

7    POW are non-profit associations sponsored by SJR/WRC. SJR/WRC, CVSEN, and POW's

8    organizational purposes are protecting and preserving wildlife habitats and the environment,

9    including combating pollution of the air and waterways in the San Joaquin Valley.

10       8.      Plaintiffs SJR/WRC, CVSEN, and POW's members use the resources in the San

11   Joaquin Valley airshed most immediately impacted by Defendants' violations of the CAA.

12   Members reside, visit, work, and recreate near the Facility and are exposed to the Facility's

13   emissions.

14       9.      Plaintiff SJR/WRC also rescues and cares for injured or ailing raptors and other

15   wildlife affected by air and water pollution throughout the San Joaquin Valley.

16       10.     The health-related, aesthetic, recreational, environmental, and economic interests of

17   SJR/WRC, CVSEN, and POW's members are and have been injured by Defendants' failure to

18   comply with its CAA permit, which is designed to achieve healthy air quality for people and the

19   environment. Interests of SJR/WRC, CVSEN, and POW's members that are directly injured by

20   Defendants' violations at the Facility include, but are not limited to: (1) breathing air in the San

21   Joaquin Valley free from excessive pollution and without the impact of and concern over negative

22   health effects caused by such pollution; (2) enjoying outdoor recreation that is unimpaired by

23   pollution from the Facility's emissions; (3) using and enjoying property and viewing and enjoying

24   natural scenery, wildlife, and a sky that is unimpaired by pollution from the Facility's excessive

25   emissions; and (4) protecting the natural ecology, including raptors and other wildlife, of the region

26   from air pollution-related impacts.

27       11.     Defendant Ardagh Glass Inc. ("Ardagh Glass") is a company organized under the

28   laws of Delaware and registered in California. According to the Title V permit issued by the San

ATA Law Group
4030 Martin Luther King Jr. Way
Oakland CA 94609
510-473-8793

2

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES

Joaquin Valley Air Pollution Control District ("Air District") to operate the Facility, Ardagh Glass is the legal owner and operator of the Facility.

12.    On information and belief, Plaintiffs allege that Ardagh Glass is a wholly owned subsidiary of Ardagh Group S.A.

13.    Defendant Ardagh Group S.A. ("Ardagh Group") has its executive office at 56, rue Charles Martel, L-2134 Luxembourg, Luxembourg. On information and belief, Plaintiffs allege that the address for Ardagh Group S.A. in the United States is 10194 Crosspoint Blvd, STE 410, Indianapolis, Indiana 46256. Defendants Ardagh Glass and Ardagh Group are collectively referred to herein as "Ardagh."

## III. <u>STATUTORY BACKGROUND</u>

### A.    CLEAN AIR ACT CITIZEN ENFORCEMENT PROVISION

14.    The CAA is designed "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. § 7401(b)(1).

15.    Any person may commence a civil enforcement action under the CAA against any party "who is alleged to have violated . . . or to be in violation of [] an emission standard or limitation." *Id*. at § 7604(a). An "emission standard or limitation" is, among other things, any term or condition of a permit issued under an approved State Implementation Plan, any standard or limitation under any approved State Implementation Plan, or any permit term of a Title V operating permit. *Id*. at § 7604(f)(4).

### B.    STATE IMPLEMENTATION PLANS (SIPs)

16.    The EPA has established National Ambient Air Quality Standards ("NAAQS") for a number of "criteria pollutants," such as particulate matter. 42 U.S.C. § 7409; 40 C.F.R. pt. 50. An area that meets the NAAQS for a particular criteria pollutant is deemed to be in "attainment" for that pollutant. *Id*. at § 7407(d)(1). An area that does not meet the NAAQS is a "nonattainment" area. *Id*.

17.    Pursuant to 42 U.S.C. § 7410, each state must adopt and submit to EPA for approval a SIP that provides for the attainment and maintenance of the NAAQS. Specifically, SIPs set forth

1  requirements for permitting programs and specific emission standards and limitations to assure that
2  geographic areas either remain in attainment or regain attainment status. Compliance with permit
3  terms and conditions is a critical component of NAAQS attainment and maintenance. Once a state's
4  SIP is approved by EPA, it is published in the Code of Federal Regulations and becomes
5  enforceable federal law. 42 U.S.C. § 7413; 40 C.F.R § 52.23.

6       18.    The California SIP can be found at 40 C.F.R. § 52.220.

7       19.    The California SIP includes the rules and regulations adopted by the various air
8  districts statewide.

9  **C.   TITLE V OPERATING PERMITS**

10       20.    Title V of the CAA, 42 U.S.C. §§ 7661 -7661f, establishes an operating permit
11  program for "major sources" of air emissions, such as the Facility. The purpose of the Title V
12  program is to ensure that all "federally-enforceable" requirements for a source's compliance with
13  CAA are collected in one place—the Title V Operating Permit. Thus, for example, the SIP
14  provisions applicable to a source are incorporated into the source's Title V permit. EPA has stated
15  that the Title V program "will enable the source, States, EPA, and the public to understand better
16  the requirements to which the source is subject, and whether the source is meeting those
17  requirements. Increased source accountability and better enforcement should result." 57 Fed. Reg.
18  32,250, 32,251 (July 21, 1992).

19       21.    California implements the Title V program pursuant to EPA-approved regulations.
20  California Health & Safety Code § 40001; 40 C.F.R. § 52.220(c).

21       22.    It is unlawful for any person to violate any requirement of a permit issued under Title
22  V or to operate a major source except in compliance with a permit issued by a permitting authority
23  under Title V. 42 U.S.C. § 7661a(a).

24  **D.   THE SAN JOAQUIN VALLEY AIR POLLUTION CONTROL DISTRICT**

25       23.    Regional air pollution control districts within California are charged with
26  implementing Title V permits. California Health & Safety Code §§ 39002, 40001.

27       24.    Defendants' Facility is under the authority of the Air District. *See* California Health
28  & Safety Code § 40600.

25.     The Air District issues, renews, revises, reopens, revokes, and terminates Title V operating permits pursuant to Air District Rule 2520, in accordance with EPA regulations codified at 40 C.F.R. § 70.

26.     The Air District has adopted rules and regulations that are approved by EPA, are part of the California SIP, and govern permits issued by the Air District, as well as operations at major sources of air emissions, such as the Facility.

27.     The California Legislature has declared: "Residents of the San Joaquin Valley suffer some of the worst air quality in the world. This poor air quality poses a significant threat to public health, the environment, and the economy of the valley." California Health and Safety Code § 40610(a).

28.     According to the Air District website, the San Joaquin Valley is not currently attaining federal air quality standards for fine particulate matter ($PM_{2.5}$) and eight-hour ozone and is not attaining state air quality standards for coarse particulate matter ($PM_{10}$), $PM_{2.5}$, and one-hour and eight-hour ozone.

## IV. <u>STATEMENT OF FACTS</u>

29.     Defendants own and operate the Facility, a glass manufacturing plant located at 24441 Avenue 12, Madera, California, 93637.

30.     The Facility is located in the San Joaquin Valley and is under the authority and jurisdiction of the Air District.

31.     At all times relevant to this civil action, the Facility and its glass melting furnace was a "major source" within the meaning of Title V of the CAA and the California SIP.

32.     At all times relevant to this action Defendants' Facility was operating under a Title V permit to operate.

33.     The Air District issued a Title V permit for the Facility on July 15, 1998, which was renewed on April 15, 2013.

34.     On or about March 30, 2017, the Air District renewed the Title V Permit, and, on information and belief, Plaintiffs allege that this remains the operative permit for the Facility ("Title V Permit").

35.     Various amendments to the Title V permit were made including on or about September 8, 2017 (Permit Unit C-801-3-13, Permit Unit C-801-5-12, and Permit Unit C-801-37-3), on or about December 3, 2018 (Permit Unit C-801-44-4), and on or about March 24, 2020 (Permit Unit C-801-50-1).

36.     The Title V Permit includes Facility-Wide Requirements (Permit Unit C-801-0-4), as well as requirements for the individually permitted units, including its two glass melting furnaces. Defendants' 75 MMBTU/Hr glass melting furnace ("Furnace #1") was permitted in the Title V permit as Permit Unit C-801-1-21. Defendants' 85 MMBTU/Hr glass melting furnace ("Furnace #2") was permitted in the Title V permit as Permit Unit C-801-2-14.

37.     The Title V Permit states: "The permittee must comply with all conditions of the permit including permit revisions originated by the District. All terms and conditions of a permit that are required pursuant to the Clean Air Act (CAA), including provisions to limit potential to emit, are enforceable by the EPA and Citizens under the CAA. Any permit noncompliance constitutes a violation of the CAA and the District Rules and Regulations, and is grounds for enforcement action, for permit termination, revocation, reopening and reissuance, or modification; or for denial of a permit renewal application. [District Rules 2070, 7.0; 2080; and 2520, 9.8.1 and 9.13.1] Federally Enforceable Through Title V Permit." Title V Permit, Permit Unit C-801-0-4, Requirement 5.

38.     The Title V Permit requires that all documents submitted to the Air District be certified by a responsible official for truth and accuracy:

a.     "Deviations from permit conditions must be promptly reported, including deviations attributable to upset conditions, as defined in the permit. For the purpose of this condition, promptly means as soon as reasonably possible, but no later than 10 days after detection. The report shall include the probable cause of such deviations, and any corrective actions or preventive measures taken. All required reports must be certified by a responsible official consistent with section 10.0 of District Rule 2520 (6/21/01). [District Rules 2520, 9.5.2 and 1100, 7.0] Federally Enforceable Through Title V Permit." Title V Permit, Permit Unit C-801-0-4, Requirement 11.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES

ATA Law Group
4030 Martin Luther King Jr. Way
Oakland CA 94609
510-473-8793

b. "With each report or document submitted under a permit requirement or a request for information by the District or EPA, the permittee shall include a certification of truth, accuracy, and completeness by a responsible official. [District Rule 2520, 9.13.1 and 10.0] Federally Enforceable Through Title V Permit." Title V Permit, Permit Unit C-801-0-4, Requirement 26.

c. "The permittee shall submit certifications of compliance with the terms and standards contained in Title V permits, including emission limits, standards and work practices, to the District and the EPA annually (or more frequently as specified in an applicable requirement or as specified by the District). The certification shall include the identification of each permit term or condition, the compliance status, whether compliance was continuous or intermittent, the methods used for determining the compliance status, and any other facts required by the District to determine the compliance status of the source. [District Rule 2520, 9.16] Federally Enforceable Through Title V Permit." Title V Permit, Permit Unit C-801-0-4, Requirement 36.

39. Air District rules also require that a permittee be truthful when submitting information. *See* District Rule 2520, Sec. 10.

40. Opacity is a measure of the amount of soot and/or particulate matter emitted in a smokestack's gas stream over a specified time period. The measurement is used to ensure compliance with emission standards for particulate matter ("PM"). Particulate matter is a mixture of small particles, including organic chemicals, metals, and ash, which can cause health and environmental problems.

41. The Title V Permit includes an emissions limit for opacity. Specifically, the Title V Permit states that "No air contaminants shall be discharged into the atmosphere for a period or periods aggregating more than 3 minutes in any one hour which is as dark or darker than Ringelmann #1 or equivalent to 20% opacity and greater, unless specifically exempted by District Rule 4101 (02/17/215)." Title V Permit, Permit Unit C-801-0-4, Requirement 22 ("Opacity Emission Limit"). This limit is also incorporated into the California SIP, 40 C.F.R. § 52.220 *et seq.*, and Air District Rule 4101, Section 5.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES

ATA Law Group
4030 Martin Luther King Jr. Way
Oakland CA 94609
510-473-8793

42.     Within the last five years, according to "Breakdown/Title V – Deviation Reporting Forms" ("Deviation Reports") Ardagh submitted to the District and/or "Breakdown Investigation Reports" ("Breakdown Reports") prepared by the Air District, Defendants exceeded the Opacity Emission Limit at least 359 times over the last five years based on a count of exceedances of more than three minutes in any hour. These exceedances occurred over sixteen separate days.

43.     The Quarterly CEMS Excess Emissions and Downtown Summaries ("CEMS Reports") submitted by Ardagh also show that for the Furnace #1 and #2 Electrostatic Precipitator ("ESP"), Ardagh reported excess opacity above the Opacity Emission Limit for the first quarter of 2017; the first, second, and fourth quarters of 2018; the third and fourth quarters of 2019; the first, third, and fourth quarters of 2020; and the first and third quarters of 2021.

44.     The Title V Permit includes the following requirements for Defendants to operate and maintain continuous emissions monitoring systems (collectively referred to herein as "CEMS Requirements"):

    a.   "The furnace shall be equipped with a continuous emission monitor (CEM) for NOx, CO, and O2. This CEM shall be located in the duct for furnace #1 upstream of the point where furnace #1 and furnace #2 emissions merge into a common duct. [District Rule 4354] Federally Enforceable Through Title V Permit." Title V Permit, Permit Unit C-801-1-21, Requirement 4.

    b.   "The common exhaust stack for furnaces #1 and #2 shall be equipped with a continuous emission monitor (CEM) for SOx at the inlet of the scrubber and downstream of the control equipment. Continuous emissions monitor(s) shall meet the requirements of 40 CFR part 51, 40 CFR parts 60.7 and 60.13, 40 CFR part 60 Appendix B (Performance Specifications) and Appendix F (Quality Assurance Procedures), and applicable sections of Rule 1080 (Stack Monitoring) (as amended December 17, 1992). [District Rule 1080] Federally Enforceable Through Title V Permit." Title V Permit, Permit Unit C-801-1-21, Requirement 7; Title V Permit, Permit Unit C-801-2-14, Requirement 16.

    c.   "The furnace shall be equipped with a continuous emission monitoring system

(CEMS) for CO and O2. This CEM shall be located in the duct for furnace #2 upstream of the point where furnace #1 and furnace #2 emissions merge into a common duct. [District Rule 4354] Federally Enforceable Through Title V Permit." Title V Permit, Permit Unit C-801-2-14, Requirement 13.

d.   "The furnace shall be equipped with a continuous emissions rate monitoring system (CERMS) for NOx. This CERMS shall be located in the duct for furnace #2 upstream of the point where furnace #1 and furnace #2 emissions merge into a common duct. [District Rule 4354] Federally Enforceable Through Title V Permit." Title V Permit, Permit Unit C-801-2-14, Requirement 14.

e.   "Continuous emissions monitor(s) shall meet the requirements of 40 CFR part 51, 40 CFR parts 60.7 and 60.13, 40 CFR part 60 Appendix B (Performance Specifications) and Appendix F (Quality Assurance Procedures), and applicable sections of Rule 1080 (Stack Monitoring). [District Rule 4354] Federally Enforceable Through Title V Permit." Title V Permit, Permit Unit C-801-1-21, Requirement 5; Title V Permit, Permit Unit C-801-2-14, Requirement 17.

f.   "Permittee shall comply with the applicable requirements for quality assurance testing and maintenance of the continuous emission monitor equipment in accordance with the procedures and guidance specified in 40 CFR Part 60, Appendix F. [District Rule 1080] Federally Enforceable Through Title V Permit." Title V Permit, Permit Unit C-801-2-14, Requirement 23.

45.   Within the last five years, according to Deviation Reports and/or Breakdown Reports, Defendants did not operate and maintain continuous emissions monitoring systems in accordance with the CEMS Requirements on at least twenty-seven occurrences, spanning at least 108 days.

46.   In all CEMS Reports submitted by Ardagh between the second quarter of 2017 and the third quarter of 2021, Ardagh reported periods of time where the CEMS for Furnace Numbers 1 and 2, both individually and combined, were not monitoring emissions.

47.   The Title V Permit includes the following requirements for Defendants operate and

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES

ATA Law Group
4030 Martin Luther King Jr. Way
Oakland CA 94609
510-473-8793

maintain monitoring systems (collectively referred to herein as "Monitoring Requirements"):

    a.  "For each monitoring system required by this subpart, the permittee shall calibrate, operate, and maintain the monitoring system according to the manufacturer's specifications and the requirements specified in Section 63.11454 paragraphs (a)(1) through (7). [40 CFR 63 Subpart SSSSSS] Federally Enforceable Through Title V Permit." Title V Permit, Permit Unit C-801-1-21, Requirement 69; *see also* Title V Permit, Permit Unit C-801-2-14, Requirement 87 (similar requirement).

    b.  "The permittee shall always operate and maintain the affected source, including air pollution control and monitoring equipment, according to the provisions in Section 63.6(e)(1)(i). [40 CFR 63 Subpart SSSSSS] Federally Enforceable Through Title V Permit." Title V Permit, Permit Unit C-801-1-21, Requirement 72; Title V Permit, Permit Unit C-801-2-14, Requirement 90.

    c.  "For each affected furnace that is subject to the emission limit specified in Table 1 to this subpart, the permittee shall monitor the performance of the furnace emission control device under the conditions specified in Section 63.11454(a)(7) and according to the requirements in Sections 63.6(e)(1) and 63.8(c) and Section 63.11455 paragraphs (c)(1) through (6). [40 CFR 63 Subpart SSSSSS] Federally Enforceable Through Title V Permit." Title V Permit, Permit Unit C-801-1-21, Requirement 73; Title V Permit, Permit Unit C-801-2-14, Requirement 91.

48.    Within the last five years, according to Deviation Reports and/or Breakdown Reports, Defendants violated at least one or more of the Monitoring Requirements on at least seventeen occasions, occurring over seventy-two days.

49.    The Title V Permit includes the following requirements for Defendants to operate and maintain the electrostatic precipitator ("ESP") (collectively referred to herein as "ESP Requirements"):

    a.  "The permittee shall operate and maintain the electrostatic precipitator (ESP) system to reduce particulate emissions to 0.2 pounds of particulate per ton of glass pulled, using EPA Method 5 as set forth in 40 C.F.R. Part 60, Appendix A, and 0.45 pounds

of particulate per ton of glass pulled, using the combined results of EPA Methods 5 and 202 as set forth in 40 C.F.R. Part 60, Appendix A. [District Rule 2201] Federally Enforceable Through Title V Permit." Title V Permit, Permit Unit C-801-1-21, Requirement 28; Title V Permit, Permit Unit C-801-2-14, Requirement 43.

b. "Monitoring of the ESP shall comply with the requirements of 40 CFR Part 64. [District Rule 4354] Federally Enforceable Through Title V Permit." Title V Permit, Permit Unit C-801-1-21, Requirement 29; Title V Permit, Permit Unit C-801-2-14, Requirement 44.

c. "The ESP shall be operated at a secondary voltage of at least 12 kV. [District Rules 2520 and 4354 and 40 CFR 64] Federally Enforceable Through Title V Permit." Title V Permit, Permit Unit C-801-1-21, Requirement 30; Title V Permit, Permit Unit C-801-2-14, Requirement 45.

d. "The ESP secondary voltage shall be monitored and recorded at a minimum during every one hour of operation. [District Rules 2520 and 4354 and 40 CFR 64] Federally Enforceable Through Title V Permit." Title V Permit, Permit Unit C-801-1-21, Requirement 31.

50. Within the last five years, according to Deviation Reports and/or Breakdown Reports, Defendants violated of one or more of these ESP Requirements on at least twelve occasions, occurring over at least fifty-two separate days.

51. The Title V Permit includes the following requirement for Defendants to operate pollution control technology to control emissions of air pollutants: "The emission control systems shall be in operation at all times during normal operations, and whenever technologically feasible including during startup, idling, transition, and shutdown conditions. [District Rule 4354] Federally Enforceable Through Title V Permit." Title V Permit, Permit Unit C-801-2-14, Requirement 10.

52. Within the last five years, according to Deviation Reports and/or Breakdown Reports, Defendants violated this requirement on at least six occasions over the last five years, and these violations occurred over twenty-three separate days.

53. The Title V Permit includes the following requirements for Defendants to limit the

ATA Law Group
4030 Martin Luther King Jr. Way
Oakland CA 94609
510-473-8793

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES

emissions of SOx (collectively referred to herein as "SOx Emissions Limits"):

    a. "The permittee shall operate and maintain the semi-dry scrubber system to reduce SOx emissions by at least 85%, excluding days when the scrubber inlet's daily average concentration of SO2 is 353 ppmdv or less, in which case the scrubber outlet's daily average concentration of SO2 shall be reduced to at least 53 ppmdv, except during periods of scheduled or preventative maintenance. The averaging period for the reduction efficiency shall be calculated on a rolling 30-day average basis, excluding days when the scrubber inlet's daily average concentration of SO2 is 353 ppmdv or less. Compliance with the SOx reduction efficiency and daily concentration standard shall be demonstrated by the combined ductwork scrubber inlet and downstream of the control equipment outlet SO2 continuous concentration monitoring. [District Rule 2201] Federally Enforceable Through Title V Permit." Title V Permit, Permit Unit C-801-1-21, Requirement 36; Title V Permit, Permit Unit C-801-2-14, Requirement 51 (identical language except District Rule 1080 is cited instead).

    b. "Except during idling, start-up, or shutdown, emissions rates from this unit shall not exceed any of the following limits: 0.8 lb-SOx/ton of container glass pulled. . .. SOx emissions limit is based on a 24 hour rolling average.. . . [District Rules 2201 and 4354] Federally Enforceable Through Title V Permit." Title V Permit, Permit Unit C-801-1-21, Requirement 20.

    c. "Except during idling, transition, start-up, or shutdown, emissions rates from this unit shall not exceed any of the following limits: 0.8 lb-SOx/ton of container glass pulled . . .. SOx emissions limit is based on a 24 hour rolling average.. . . [District Rules 2201 and 4354] Federally Enforceable Through Title V Permit." Title V Permit, Permit Unit C-801-2-14, Requirement 33.

54. Within the last five years, according to Deviation Reports and/or Breakdown Reports, Defendants exceeded one or more of the SOx Emissions Limits on at least eighteen occasions.

ATA Law Group
4030 Martin Luther King Jr. Way
Oakland CA 94609
510-473-8793

55.     According to CEMS Reports submitted by Ardagh, Ardagh reported excess emissions of the SOx outlet (ppm) limit during the fourth quarter of 2018, the third quarters of 2019 and 2020, and the first three quarters of 2021.Ardagh further reported excess emissions for the SOx outlet lbs/ton limit during the third quarter of 2019 and the second and third quarters of 2021.

56.     The Title V Permit includes the following requirements for Defendants to limit the emissions of NOx: "Except during idling, transition, start-up, or shutdown, NOx emissions from this furnace shall not exceed 1.3 lbs/ton of glass produced, on a 24 hour block average basis. [District Rules 2201 and 4354] Federally Enforceable Through Title V Permit." Title V Permit, Permit Unit C-801-2-14, Requirement 35 ("NOx Emissions Limit").

57.     Particles from NOx emissions can cause respiratory issues including lung tissue damage and contributes to smog and acid rain.

58.     Within the last five years, according to Deviation Reports and/or Breakdown Reports, Defendants exceeded the NOx Emissions Limit at least four times.

59.     The CEMS Reports submitted by Ardagh also show that the first two quarters in 2018 and from the second quarter in 2020 to the second quarter in 2021, Ardagh reported 192 hours where it exceeded the NOx Emission Limit.

60.     The Title V Permit includes the following requirements for Defendants to report information and maintain records (collectively referred to herein as "Reporting Requirements"):

    a.  "The owner or operator shall notify the District of any breakdown condition as soon as reasonably possible, but no later than one hour after its detection, unless the owner or operator demonstrates to the District's satisfaction that the longer reporting period was necessary. [District Rule 1100, 6.1; County Rules 110 (Fresno, Stanislaus, San Joaquin); 109 (Merced); 113 (Madera); and 111 (Kern, Tulare, Kings)] Federally Enforceable Through Title V Permit." Title V Permit, Permit Unit C-801-0-4, Requirement 1.

    b.  "Deviations from permit conditions must be promptly reported, including deviations attributable to upset conditions, as defined in the permit. For the purpose of this condition, promptly means as soon as reasonably possible, but no later than 10 days

ATA Law Group
4030 Martin Luther King Jr. Way
Oakland CA 94609
510-473-8793

after detection. The report shall include the probable cause of such deviations, and any corrective actions or preventive measures taken. All required reports must be certified by a responsible official consistent with section 10.0 of District Rule 2520 (6/21/01). [District Rules 2520, 9.5.2 and 1100, 7.0] Federally Enforceable Through Title V Permit." Title V Permit, Permit Unit C-801-0-4, Requirement 11.

c.  "Operators shall maintain daily records of the following items: total hours of operation, the quantity of glass pulled from each furnace, NOx emission rate in lb/ton glass pulled, CO emission rate, VOC emission rate, SOx emission rate in lb/ton glass pulled, PM10 emission rate in lb/ton glass pulled, weight of mixed color cullet used, total amount of cullet used by weight, ratio, expressed in percent, of mixed color mix weight to total cullet weight, source tests and source test results, maintenance and repair, malfunction, idling, start-up, and shutdown. For pollutants monitored using an approved parametric monitoring arrangement, operators shall maintain records of the acceptable range for each approved key system operating parameter, as established during source test, and shall record the operating values of the key system operating parameters at the approved recording frequency. [District Rules 2201 and 4354] Federally Enforceable Through Title V Permit." Title V Permit, Permit Unit C-801-1-21, Requirement 55.

61.     Within the last five years, according to Deviation Reports and/or Breakdown Reports, Defendants violated these Reporting Requirements on at eleven occasions that occurred over fifty-nine separate days.

62.     The Title V Permit includes the following requirement regarding testing and monitoring included in the Title V Permit: "The operator shall demonstrate compliance with the daily aggregate emissions through source test results and monitoring by either CEMS or approved alternate emission monitoring methods. [District Rule 4354] Federally Enforceable Through Title V Permit." Title V Permit, Permit Unit C-801-1-21, Requirement 60 and Permit Unit C-801-2-14, Requirement 75 ("Testing Requirement").

63.     According to Deviation Reports and/or Breakdown Reports, Ardagh violated this

ATA Law Group
4030 Martin Luther King Jr. Way
Oakland CA 94609
510-473-8793

Testing Requirement on at least eight occasions over the past five years when the CEMS was malfunctioning.

### FIRST CAUSE OF ACTION

**Defendants' Failure to Meet the Opacity Emissions Limit in Violation of its Title V Permit, Permit Unit C-801-0-4, Requirement 22, and the Clean Air Act, 42 U.S.C. §§ 7604(a), 7604(f)**

64.     Plaintiffs incorporate the allegations contained in the above paragraphs as though fully set forth herein.

65.     According to Deviation Reports and/or Breakdown Reports, Ardagh exceeded the Opacity Emission Limit at least 359 times over the last five years, based on a count of exceedances of more than three minutes in any hour, with the exceedances occurring over sixteen separate days (*see* **Exhibit A,** the Notice of Intent to Sue and its Exhibit A, attached hereto).

66.     The CEMS Reports submitted by Ardagh also show that for the Furnace #1 and #2 ESP, Ardagh reported excess opacity above the Opacity Emission Limit for the first quarter of 2017; the first, second, and fourth quarters of 2018; the third and fourth quarters of 2019; the first, third, and fourth quarters of 2020; and the first and third quarters of 2021 (*see* **Exhibit A**, the Notice of Intent to Sue and its Exhibit B, attached hereto).

67.     Each time that Defendants exceeded the Opacity Emission Limit is a separate and distinct violation of the Title V Permit, Permit Unit C-801-0-4, Requirement 22, as well as the CAA and the California SIP (*see* 40 C.F.R. § 52.220 *et seq.*), and Air District Rule 4101, Section 5 (*see also* 42 U.S.C. §§ 7604(a), 7604(f)).

68.     On information and belief, Plaintiffs allege that Defendants have not taken actions sufficient to ensure that there is no real likelihood they would exceed the Opacity Emissions Standard again in the future.

69.     On information and belief, Plaintiffs allege that these violations have continued and are continuing.

70.     For each violation, Defendants are subject to civil penalties up to $51,796 per day for violations occurring after November 2, 2015. *See* 40 C.F.R section 19.4, Table 1.

71.     An action for injunctive relief is authorized by CAA Section 304(a), 42 U.S.C. §

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES

ATA Law Group
4030 Martin Luther King Jr. Way
Oakland CA 94609
510-473-8793

7604(a). Continuing commission of the acts and omissions alleged above would irreparably harm Plaintiffs and their members, and the citizens of the State of California, for which harm they have no plain, speedy, or adequate remedy at law.

72.     An action for declaratory relief is authorized by 28 U.S.C. § 2201(a) because an actual controversy exists as to the rights and other legal relations of the Parties.

## SECOND CAUSE OF ACTION

**Defendants' Failure to Meet Requirements to Operate and Maintain Continuous Emissions Monitoring Systems Properly in Violation of its Title V Permit (Title V Permit, Permit Unit C-801-1-21, Requirement 4; Title V Permit, Permit Unit C-801-1-21, Requirement 7; Title V Permit, Permit Unit C-801-2-14, Requirement 16; Title V Permit, Permit Unit C-801-2-14, Requirement 13; Title V Permit, Permit Unit C-801-2-14, Requirement 14; Title V Permit, Permit Unit C-801-1-21, Requirement 5; Title V Permit, Permit Unit C-801-2-14, Requirement 17; Title V Permit, Permit Unit C-801-2-14, Requirement 23) and the Clean Air Act, 42 U.S.C. §§ 7604(a), 7604(f)**

73.     Plaintiffs incorporate the allegations contained in the above paragraphs as though fully set forth herein.

74.     According to Deviation Reports and/or Breakdown Reports, Defendants violated one or more of the CEMS Requirements on at least twenty-seven occasions, occurring over at least 108 days in the last five years (*see* **Exhibit A,** the Notice of Intent to Sue and its Exhibit C, attached hereto).

75.     The CEMS Reports submitted by Ardagh show that in all eighteen of the quarters between the second quarter of 2017 and the third quarter of 2021, Ardagh reported periods of time where the CEMS for Furnace Numbers 1 and 2, both individually and combined, were not monitoring emissions (*see* **Exhibit A,** the Notice of Intent to Sue and its Exhibit D, attached hereto).

76.     Each time that Defendants failed to operate and maintain the required CEMS is a separate and distinct violation of the Title V Permit (Title V Permit, Permit Unit C-801-1-21, Requirement 4; Title V Permit, Permit Unit C-801-1-21, Requirement 7; Title V Permit, Permit Unit C-801-2-14, Requirement 16; Title V Permit, Permit Unit C-801-2-14, Requirement 13; Title V Permit, Permit Unit C-801-2-14, Requirement 14; Title V Permit, Permit Unit C-801-1-21, Requirement 5; Title V Permit, Permit Unit C-801-2-14, Requirement 17; Title V Permit, Permit Unit C-801-2-14, Requirement 23), as well as the CAA and the California SIP (*see* 42 U.S.C. §§

ATA Law Group
4030 Martin Luther King Jr. Way
Oakland CA 94609
510-473-8793

7604(a), 7604(f)).

77.     On information and belief, Plaintiffs allege that Defendants have not taken actions sufficient to ensure there is no real likelihood they would violate the CEMS Requirements again in the future.

78.     On information and belief, Plaintiffs allege that these violations are continuing.

79.     For each violation, Defendants are subject to civil penalties up to $51,796 per day for violations occurring after November 2, 2015. *See* 40 C.F.R section 19.4, Table 1.

80.     An action for injunctive relief is authorized by CAA Section 304(a), 42 U.S.C. § 7604(a). Continuing commission of the acts and omissions alleged above would irreparably harm Plaintiffs and their members, and the citizens of the State of California, for which harm they have no plain, speedy, or adequate remedy at law.

81.     An action for declaratory relief is authorized by 28 U.S.C. § 2201(a) because an actual controversy exists as to the rights and other legal relations of the Parties.

## **THIRD CAUSE OF ACTION**

**Defendants' Failure to Properly Operate and Maintain Monitoring Systems in Violation of its Title V Permit (Title V Permit, Permit Unit C-801-1-21, Requirement 69; Title V Permit, Permit Unit C-801-2-14, Requirement 87; Title V Permit, Permit Unit C-801-1-21, Requirement 72; Title V Permit, Permit Unit C-801-2-14, Requirement 90; Title V Permit, Permit Unit C-801-1-21, Requirement 73; Title V Permit, Permit Unit C-801-2-14, Requirement 91) and the Clean Air Act, 42 U.S.C. §§ 7604(a), 7604(f)**

82.     Plaintiffs incorporate the allegations contained in the above paragraphs as though fully set forth herein.

83.     According to Deviation Reports and/or Breakdown Reports, over the last five years, Ardagh has violated one or more of the Monitoring Requirements on at least seventeen occasions, occurring over seventy-two days (*see* **Exhibit A,** the Notice of Intent to Sue and its Exhibit E, attached hereto).

84.     Each time that Defendants failed to meet Monitoring Requirements is a separate and distinct violation of the Title V Permit (Title V Permit, Permit Unit C-801-1-21, Requirement 69; Title V Permit, Permit Unit C-801-2-14, Requirement 87; Title V Permit, Permit Unit C-801-1-21, Requirement 72; Title V Permit, Permit Unit C-801-2-14, Requirement 90; Title V Permit, Permit

ATA Law Group
4030 Martin Luther King Jr. Way
Oakland CA 94609
510-473-8793

Unit C-801-1-21, Requirement 73; Title V Permit, Permit Unit C-801-2-14, Requirement 91), as well as the CAA and the California SIP (*see* 42 U.S.C. §§ 7604(a), 7604(f)).

85.     On information and belief, Plaintiffs allege that Defendants have not taken actions sufficient to ensure there is no real likelihood they would violate the Monitoring Requirements again in the future.

86.     On information and belief, Plaintiffs allege that these violations are continuing.

87.     For each violation, Defendants are subject to civil penalties up to $51,796 per day for violations occurring after November 2, 2015. *See* 40 C.F.R section 19.4, Table 1.

88.     An action for injunctive relief is authorized by CAA Section 304(a), 42 U.S.C. § 7604(a). Continuing commission of the acts and omissions alleged above would irreparably harm Plaintiffs and their members, and the citizens of the State of California, for which harm they have no plain, speedy, or adequate remedy at law.

89.     An action for declaratory relief is authorized by 28 U.S.C. § 2201(a) because an actual controversy exists as to the rights and other legal relations of the Parties.

## FOURTH CAUSE OF ACTION

**Defendants' Failure to Meet Requirements to Operate and Maintain the Electrostatic Precipitator Properly in Violation of its Title V Permit (Title V Permit, Permit Unit C-801-1-21, Requirement 28; Title V Permit, Permit Unit C-801-2-14, Requirement 43; Title V Permit, Permit Unit C-801-1-21, Requirement 29; Title V Permit, Permit Unit C-801-2-14, Requirement 44; Title V Permit, Permit Unit C-801-1-21, Requirement 30; Title V Permit, Permit Unit C-801-2-14, Requirement 45; Title V Permit, Permit Unit C-801-1-21, Requirement 31) and the Clean Air Act, 42 U.S.C. §§ 7604(a), 7604(f)**

90.     Plaintiffs incorporate the allegations contained in the above paragraphs as though fully set forth herein.

91.     According to Deviation Reports and/or Breakdown Reports, Ardagh has violated one or more of the ESP Requirements on at least twelve occasions, occurring over at least fifty-two separate days in the last five years (*see* **Exhibit A,** the Notice of Intent to Sue and its Exhibit E, attached hereto).

92.     Each time that Defendants failed to meet any ESP Requirement is a separate and distinct violation of the Title V Permit (Title V Permit, Permit Unit C-801-1-21, Requirement 28;

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES

Title V Permit, Permit Unit C-801-2-14, Requirement 43; Title V Permit, Permit Unit C-801-1-21, Requirement 29; Title V Permit, Permit Unit C-801-2-14, Requirement 44; Title V Permit, Permit Unit C-801-1-21, Requirement 30; Title V Permit, Permit Unit C-801-2-14, Requirement 45; Title V Permit, Permit Unit C-801-1-21, Requirement 31), as well as the CAA and the California SIP (*see* 42 U.S.C. §§ 7604(a), 7604(f)).

93.     On information and belief, Plaintiffs allege that Defendants have not taken actions sufficient to ensure there is no real likelihood they would violate the ESP Requirements again in the future.

94.     On information and belief, Plaintiffs allege that these violations are continuing.

95.     For each violation, Defendants are subject to civil penalties up to $51,796 per day for violations occurring after November 2, 2015. *See* 40 C.F.R section 19.4, Table 1.

96.     An action for injunctive relief is authorized by CAA Section 304(a), 42 U.S.C. § 7604(a). Continuing commission of the acts and omissions alleged above would irreparably harm Plaintiffs and their members, and the citizens of the State of California, for which harm they have no plain, speedy, or adequate remedy at law.

97.     An action for declaratory relief is authorized by 28 U.S.C. § 2201(a) because an actual controversy exists as to the rights and other legal relations of the Parties.

## FIFTH CAUSE OF ACTION

**Defendants' Failure to Meet Requirements to Operate Pollution Control Technology to Control Emissions of Air Pollutants Properly in Violation of its Title V Permit (Title V Permit, Permit Unit C-801-2-14, Requirement 10) and the Clean Air Act, 42 U.S.C. §§ 7604(a), 7604(f)**

98.     Plaintiffs incorporate the allegations contained in the above paragraphs as though fully set forth herein.

99.     According to Deviation Reports and/or Breakdown Reports, Ardagh has violated the Title V Permit's requirements to operate pollution control technology to control emissions of air pollutants (Title V Permit, Permit Unit C-801-2-14, Requirement 10) on at least six occasions over the last five years; these violations occurred over twenty-three separate days (*see* **Exhibit A** the Notice of Intent to Sue and its exhibit G, attached hereto).

ATA Law Group
4030 Martin Luther King Jr. Way
Oakland CA 94609
510-473-8793

100.    Each time that Defendants failed to properly operate pollution control technology to control emissions of air pollutants is a separate and distinct violation of the Title V Permit (Title V Permit, Permit Unit C-801-2-14, Requirement 10), as well as the CAA and the California SIP (*see* 42 U.S.C. §§ 7604(a), 7604(f)).

101.    On information and belief, Plaintiffs allege that Defendants have not taken actions sufficient to ensure there is no real likelihood they would violate the requirement to properly operate pollution control technology to control emissions of air pollutants again in the future.

102.    On information and belief, Plaintiffs allege that these violations are continuing.

103.    For each violation, Defendants are subject to civil penalties up to $51,796 per day for violations occurring after November 2, 2015. *See* 40 C.F.R section 19.4, Table 1.

104.    An action for injunctive relief is authorized by CAA Section 304(a), 42 U.S.C. § 7604(a). Continuing commission of the acts and omissions alleged above would irreparably harm Plaintiffs and their members, and the citizens of the State of California, for which harm they have no plain, speedy, or adequate remedy at law.

105.    An action for declaratory relief is authorized by 28 U.S.C. § 2201(a) because an actual controversy exists as to the rights and other legal relations of the Parties.

## SIXTH CAUSE OF ACTION

**Defendants' Failure to Meet SOx Emissions Limits Included in the Title V Permit in (Title V Permit, Permit Unit C-801-1-21, Requirement 36; Title V Permit, Permit Unit C-801-2-14, Requirement 51; Title V Permit, Permit Unit C-801-1-21, Requirement 20; Title V Permit, Permit Unit C-801-2-14, Requirement 33) and the Clean Air Act, 42 U.S.C. §§ 7604(a), 7604(f)**

106.    Plaintiffs incorporate the allegations contained in the above paragraphs as though fully set forth herein.

107.    According to Deviation Reports and/or Breakdown Reports, over the last five years, Ardagh has violated at least one of the SOx Emissions Limits on at least eighteen occasions (*see* **Exhibit A,** the Notice of Intent to Sue and its Exhibit H, attached hereto).

108.    The CEMS Reports submitted by Ardagh show that for the SOx outlet (ppm) limit, Ardagh reported excess emissions during the fourth quarter of 2018, the third quarters of 2019 and 2020, and the first three quarters of 2021 (*see* **Exhibit A,** the Notice of Intent to Sue and its Exhibit

ATA Law Group
4030 Martin Luther King Jr. Way
Oakland CA 94609
510-473-8793

I, attached hereto).

109.     Each time that Defendants failed to meet SOx Emissions Limits is a separate and distinct violation of the Title V Permit (Title V Permit, Permit Unit C-801-1-21, Requirement 36; Title V Permit, Permit Unit C-801-2-14, Requirement 51; Title V Permit, Permit Unit C-801-1-21, Requirement 20; Title V Permit, Permit Unit C-801-2-14, Requirement 33), as well as the CAA and the California SIP (*see* 42 U.S.C. §§ 7604(a), 7604(f)).

110.     On information and belief, Plaintiffs allege that Defendants have not taken actions sufficient to ensure there is no real likelihood they would violate the SOx Emissions Limits again in the future.

111.     On information and belief, Plaintiffs allege that these violations are continuing.

112.     For each violation, Defendants are subject to civil penalties up to $51,796 per day for violations occurring after November 2, 2015. *See* 40 C.F.R section 19.4, Table 1.

113.     An action for injunctive relief is authorized by CAA Section 304(a), 42 U.S.C. § 7604(a). Continuing commission of the acts and omissions alleged above would irreparably harm Plaintiffs and their members, and the citizens of the State of California, for which harm they have no plain, speedy, or adequate remedy at law.

114.     An action for declaratory relief is authorized by 28 U.S.C. § 2201(a) because an actual controversy exists as to the rights and other legal relations of the Parties.

## SEVENTH CAUSE OF ACTION

**Defendants' Failure to Meet the NOx Emissions Limit in Violation of its Title V Permit (Title V Permit, Permit Unit C-801-2-14, Requirement 35) and the Clean Air Act, 42 U.S.C. §§ 7604(a), 7604(f)**

115.     Plaintiffs incorporate the allegations contained in the above paragraphs as though fully set forth herein.

116.     According to Deviation Reports and/or Breakdown Reports, Ardagh has exceeded the NOx Emissions Limit on at least four occasions over the last five years (*see* **Exhibit A,** the Notice of Intent to Sue and its Exhibit J, attached hereto).

117.     The CEMS Reports submitted by Ardagh also show that the first two quarters in

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES

ATA Law Group
4030 Martin Luther King Jr. Way
Oakland CA 94609
510-473-8793

2018 and from the second quarter in 2020 to the second quarter in 2021, Ardagh reported 192 hours where it exceeded the NOx Emission Limit (*see* **Exhibit A,** the Notice of Intent to Sue and its Exhibit K, attached hereto).

118.     Each time that Defendants failed to meet the NOx emission standard is a separate and distinct violation of the Title V Permit (Title V Permit, Permit Unit C-801-2-14, Requirement 35), as well as the CAA and the California SIP (*see* 42 U.S.C. §§ 7604(a), 7604(f)).

119.     On information and belief, Plaintiffs allege that Defendants have not taken actions sufficient to ensure there is no real likelihood they would violate the NOx Emissions Limit again in the future.

120.     On information and belief, Plaintiffs allege that these violations are continuing.

121.     For each violation, Defendants are subject to civil penalties up to $51,796 per day for violations occurring after November 2, 2015. *See* 40 C.F.R section 19.4, Table 1.

122.     An action for injunctive relief is authorized by CAA Section 304(a), 42 U.S.C. § 7604(a). Continuing commission of the acts and omissions alleged above would irreparably harm Plaintiffs and their members, and the citizens of the State of California, for which harm they have no plain, speedy, or adequate remedy at law.

123.     An action for declaratory relief is authorized by 28 U.S.C. § 2201(a) because an actual controversy exists as to the rights and other legal relations of the Parties.

## EIGHTH CAUSE OF ACTION

**Defendants' Failure to Properly Report Information and Maintain Records in Violation of its Title V Permit (Title V Permit, Permit Unit C-801-0-4, Requirement 1; Title V Permit, Permit Unit C-801-0-4, Requirement 11; Title V Permit, Permit Unit C-801-1-21, Requirement 55) and the Clean Air Act, 42 U.S.C. §§ 7604(a), 7604(f)**

124.     Plaintiffs incorporate the allegations contained in the above paragraphs as though fully set forth herein.

125.     According to Deviation Reports and/or Breakdown Reports, over the last five years, Ardagh has violated one or more of the Reporting Requirements on at least eleven occasions; these violations occurred over fifty-nine separate days (*see* **Exhibit A,** the Notice of Intent to Sue and its Exhibit L, attached hereto).

ATA Law Group
4030 Martin Luther King Jr. Way
Oakland CA 94609
510-473-8793

126.     Each time that Defendants failed to meet the Reporting Requirements is a separate and distinct violation of the Title V Permit (Title V Permit, Permit Unit C-801-0-4, Requirement 1; Title V Permit, Permit Unit C-801-0-4, Requirement 11; Title V Permit, Permit Unit C-801-1-21, Requirement 55), as well as the CAA and the California SIP (*see* 42 U.S.C. §§ 7604(a), 7604(f)).

127.     On information and belief, Plaintiffs allege that Defendants have not taken actions sufficient to ensure there is no real likelihood they would violate the Reporting Requirements again in the future.

128.     On information and belief, Plaintiffs allege that these violations are continuing.

129.     For each violation, Defendants are subject to civil penalties up to $51,796 per day for violations occurring after November 2, 2015. *See* 40 C.F.R section 19.4, Table 1.

130.     An action for injunctive relief is authorized by CAA Section 304(a), 42 U.S.C. § 7604(a). Continuing commission of the acts and omissions alleged above would irreparably harm Plaintiffs and their members, and the citizens of the State of California, for which harm they have no plain, speedy, or adequate remedy at law.

131.     An action for declaratory relief is authorized by 28 U.S.C. § 2201(a) because an actual controversy exists as to the rights and other legal relations of the Parties.

## NINTH CAUSE OF ACTION

**Defendants' Failure to Properly Conduct Testing and Monitoring in Violation of its Title V Permit (Title V Permit, Permit Unit C-801-1-21, Requirement 60; Title V Permit, Permit Unit C-801-2-14, Requirement 75) and the Clean Air Act, 42 U.S.C. §§ 7604(a), 7604(f)**

132.     Plaintiffs incorporate the allegations contained in the above paragraphs as though fully set forth herein.

133.     According to Deviation Reports and/or Breakdown Reports, Ardagh has self-reported deviations from the Testing Requirement on at least eight occasions over the last five years when the CEMS was malfunctioning (*see* **Exhibit A,** the Notice of Intent to Sue and its Exhibit M, attached hereto).

134.     Each time that Defendants failed to meet the Testing Requirement is a separate and distinct violation of the Title V Permit (Title V Permit, Permit Unit C-801-1-21, Requirement 60;

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES

ATA Law Group
4030 Martin Luther King Jr. Way
Oakland CA 94609
510-473-8793

Title V Permit, Permit Unit C-801-2-14, Requirement 75), as well as the CAA and the California SIP (*see* 42 U.S.C. §§ 7604(a), 7604(f)).

135.   On information and belief, Plaintiffs allege that Defendants have not taken actions sufficient to ensure there is no real likelihood they would violate the Testing Requirement again in the future.

136.   On information and belief, Plaintiffs allege that these violations are continuing.

137.   For each violation, Defendants are subject to civil penalties up to $51,796 per day for violations occurring after November 2, 2015. *See* 40 C.F.R section 19.4, Table 1.

138.   An action for injunctive relief is authorized by CAA Section 304(a), 42 U.S.C. § 7604(a). Continuing commission of the acts and omissions alleged above would irreparably harm Plaintiffs and their members, and the citizens of the State of California, for which harm they have no plain, speedy, or adequate remedy at law.

139.   An action for declaratory relief is authorized by 28 U.S.C. § 2201(a) because an actual controversy exists as to the rights and other legal relations of the Parties.

WHEREFORE, Plaintiffs pray for judgment against Defendants as set forth hereafter.

## V.  RELIEF REQUESTED

WHEREFORE, based upon the allegations set forth above, Plaintiffs respectfully request that this Court:

A.     Declare that Defendants violated the Clean Air Act, the California SIP, and its Title V Permit by exceeding its opacity emissions limit;

B.     Declare that Defendants violated the Clean Air Act, the California SIP, and its Title V Permit by failing to meet requirements to operate and maintain continuous emissions monitoring systems properly (i.e., CEMS Requirements);

C.     Declare that Defendants violated the Clean Air Act the California SIP, and its Title V Permit by failing to properly operate and maintain monitoring systems (i.e., Monitoring Requirements);

ATA Law Group
4030 Martin Luther King Jr. Way
Oakland CA 94609
510-473-8793

D.      Declare that Defendants violated the Clean Air Act, the California SIP, and its Title V Permit by failing to meet requirements to operate and maintain the electrostatic precipitator (i.e., ESP Requirements);

E.      Declare that Defendants violated the Clean Air Act, the California SIP, and its Title V Permit by failing to meet requirements to operate pollution control technology to control emissions of air pollutants;

F.      Declare that Defendants violated the Clean Air Act, the California SIP, and its Title V Permit by failing to meet SOx Emissions Limits;

G.      Declare that Defendants violated the Clean Air Act, the California SIP, and its Title V Permit by failing to meet NOx Emissions Limit;

H.      Declare that Defendants violated the Clean Air Act, the California SIP, and its Title V Permit by failing to properly report information and maintain records (i.e., Reporting Requirements);

I.      Declare that Defendants violated the Clean Air Act, the California SIP, and its Title V Permit by failing to properly conduct testing and monitoring (i.e., Testing Requirement);

J.      Enjoin Defendants from violating the substantive and procedural requirements of its Title V Permit;

K.      Order Defendants to take all appropriate actions, including beneficial mitigation projects authorized under the Clean Air Act, 42 U.S.C. § 7604(g)(2), to remedy, mitigate, and offset the harm to the public health and the environment caused by the violations of the Clean Air Act alleged above;

L.      Assess a civil penalty against Defendants of $51,796 per day for each violation proven by Plaintiffs occurring after March 18, 2017.

M.      Award Plaintiffs its costs and attorneys' fees related to this action pursuant to 42 U.S.C. § 7604(d);

N.      Grant such other relief as the Court deems just and proper.

ATA Law Group
4030 Martin Luther King Jr. Way
Oakland CA 94609
510-473-8793

1    DATED: May 18, 2022                    AQUA TERRA AERIS LAW GROUP

2

3                                          s/Matthew C. Maclear
                                           _____
4                                          Matthew C. Maclear
                                           Erica A. Maharg
5                                          Attorneys for Plaintiffs SAN JOAQUIN
                                           RAPTOR/WILDLIFE RESCUE CENTER,
6                                          CENTRAL VALLEY SAFE
                                           ENVIRONMENT NETWORK, and
7                                          PROTECT OUR WATER

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES

ATA Law Group
4030 Martin Luther King Jr. Way
Oakland CA 94609
510-473-8793